UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HELEN STROUT,  )<br>      Plaintiff  )<br>  )<br>v.  )<br>  )<br>THE LINCOLN NATIONAL LIFE  )<br>INSURANCE COMPANY,  )<br>      Defendant  ) | COMPLAINT<br>Civil Action No._____ |

## COMPLAINT

### NATURE OF THE ACTION

This is an action brought under the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1132, to secure long-term disability benefits wrongfully withheld from Plaintiff Strout by Defendant The Lincoln National Life Insurance Company (hereinafter "Lincoln").

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451 and 1331. This action is authorized and instituted pursuant to Section 1132 of ERISA, 29 U.S.C. § 1001 *et seq.*

2. The breach of the insurance policy in question was and is now being committed within the jurisdiction of the United States District Court for the District of Maine.

### PARTIES

3. Plaintiff Helen Strout is a resident of Hulls Cove, Maine, County of Hancock, State of Maine. Ms. Strout was employed as a General Duty Acute Care Registered Nurse for Mount Desert Island Hospital for approximately 36 years. While employed by Defendant, Plaintiff was covered by Mount Desert Island Hospital's Group Policy No. 00001010064500000, involving long-term disability benefits, and underwritten at least in part by Lincoln. Plaintiff is authorized to bring this action by Section 1132 of ERISA, 29 U.S.C. § 1001 *et seq.*

4. Upon information and belief, Lincoln is a for-profit disability insurer with headquarters in Fort Wayne, Indiana, and is the underwriter for the long-term disability plan during the relevant time period. Upon information and belief, Defendant Lincoln was authorized to do business in the State of Maine during the relevant time period.

### FACTS

1

5.      Starting on or about February 2, 2015, Plaintiff Helen Strout was determined to be disabled by Lincoln and approved for Short-Term Disability Benefits. At that time, she was employed as a General Duty Acute Care Registered Nurse with Mount Desert Island Hospital.

6.      Short-Term Disability benefits continued to be paid by Lincoln until May 1, 2015, when Lincoln began paying Plaintiff Long-Term Disability Benefits.

7.      As a full-time General Duty Acute Care Registered Nurse, Plaintiff was covered by Mount Desert Island Hospital's long-term disability insurance policy, an employee plan that was insured by Defendant Lincoln under Group Policy No. 000010100764500000.

8.      Under Lincoln's plan, Plaintiff was entitled to receive from Lincoln long-term disability benefits for twenty-four months if medically unable to perform all of the duties of her Own Occupation

9.      After twenty-four months of the Own Occupation Period, Lincoln promised to pay Plaintiff Long-Term Disability benefits if she was unable to perform one or more of the Main Duties of any occupation which her training, education, or experience would reasonably allow.

10.     By letter dated June 12, 2015, Defendant Lincoln determined that Plaintiff was unable to perform her own occupation as a General Duty Acute Care Registered Nurse as of May 1, 2015. Lincoln determined that her monthly Long-Term Disability benefit amount was $3,852.01 paid her this amount until June 6, 2016.

11.     In order to remain eligible for Long-Term benefits under Lincoln's policy, Defendant required Plaintiff to apply for Social Security Disability benefits. Plaintiff met this requirement and as a result, the Social Security Administration determined that Ms. Strout became disabled as of January 31, 2015. The Defendant then immediately recouped overpayment as a result of the Social Security Disability award and dramatically reduced Ms. Strout's Long-Term Disability monthly benefit.

12.     On June 7, 2016, Lincoln issued the Plaintiff a benefit claims denial stating that Lincoln did not consider her disabled under the policy's definition of disability. Between the time period of Lincoln initially determining that Plaintiff met the definition of "disability" and granted benefits, and when Lincoln issued its denial letter, the definition of "disability" did not change and Plaintiff's serious, debilitating medical condition did not improve.

13.     Lincoln's decision to deny Plaintiff long-term disability benefits was based upon its opinion that the medical documentation in the claim file did not support the policy's definition of "Total Disability." Specifically, Lincoln stated that there were no examination findings or diagnostic findings to support functional impairment or

medically necessary restrictions – no decrease in range of motion, inflammatory changes in muscles or joints, or ankylosis. To support its decision, Lincoln relied on the opinion of an in-house physician who did not examine Ms. Strout but rather obtained a medical record review of Plaintiff's medical evidence.

14.     Before issuing its denial of long-term disability benefits effective June 6, 2016, Defendant had possession of voluminous medical reports that supported Plaintiff's ongoing severe impairments that rendered her disabled under Lincoln's policy and entitled her to long-term disability benefits.

15.     For example, Defendant Lincoln had possession of treatment notes from Drs. Edward Gilmore and Joanna Swartzbaugh, a neck surgeon. Additionally, Dr. Gilmore complied with Lincoln's request and completed an Attending Physician Statement dated April 5, 2016 in which he confirmed Ms. Strout suffered from cervical spondylosis and experienced a severe limitation of functional capacity and was incapable of minimal (sedentary) activity. Dr. Gilmore also confirmed that Ms. Strout was totally disabled from her job and additionally had a loss of cognitive functioning.

16.     Defendant Lincoln did not place any weight on the Social Security Administration's finding that Ms. Strout was not only disabled from her own occupation, but from any job existing in substantial numbers in the national economy. Defendant Lincoln also performed no vocational analysis to determine whether her medically documented functional limits affected her abilities to perform her own occupation or other occupations.

17.     The Plaintiff appealed her long-term disability denial in a letter dated November 8, 2016. With her appeal, Ms. Strout submitted a narrative authored by Dr. Gilmore dated October 26, 2016 in which he detailed the failed March 2015 cervical fusion and failed conservative treatments post-surgery which severely impacted her activities of daily living. Dr. Gilmore again confirmed that Ms. Strout was unable to return to her regular occupation as a full-duty acute care nurse.

18.     Defendant then denied Plaintiff's appeal in a letter dated December 1, 2016 and determined that the medical documentation did not support a determination that Plaintiff was unable to perform the main duties of her own occupation beyond her date last paid. In making this determination on appeal, Defendant relied upon a paper review of medical records from Dr. Bhavini S. Chandarana, who concluded that physical examinations did not show motor, sensory, or focal neurological deficits warranting functional limitations or restrictions from June 7, 2016 forward. Defendant, again, placed no weight on the Social Security Administration's determination that Plaintiff was disabled or the opinion of her own treating medical doctor.

19.     On March 28, 2017, Ms. Strout's attorney requested numerous documents from Defendant Lincoln. Defendant produced no documents and indicated that it relied upon "no internal rules, guidelines, protocols, claims manuals or training manuals" during the claims determination process. Additionally, Defendant failed to produce the requested

"reliable statistics" and "total amount in fees" from Dr. Chandarana's medical review of the file as Defendant cited that the requested information was not relevant to the claim decision and not considered in the decision-making process.

20. The Plaintiff then submitted a second appeal by letter dated May 1, 2017. Among the documents submitted were records of Cooper Gilmore Health Center, the Claimant's personal care provider, for *monthly* office visits from 1/17/17 through 6/16/17. The treatment records showed that doctors continued attempts at pain management on a regular monthly basis using pharmacologic therapy that included; oxycodone, flexeril, Cymbalta, and nerve pain prescriptions including trials of gabapentin and Lyrica, (not approved by her health insurer). She is also prescribed trazodone for depression which is co-morbid with her arthritic spine pain.

21. The records also showed that in January 2017, Ms. Strout's Cymbalta was increased to 90 mg daily and baclofen was substituted for flexeril in an attempt to better control her pain and spasms. The records also confirm a diagnosis of chronic pain syndrome. In February 2017, it was noted that Ms. Strout's pain caused a very poor functional status. An oxycodone taper began reducing her to 135 mg from 150mg with close monitoring for pain control. On March 17, it was noted that her quality of life and functional status were declining due to chronic pain. Dr. Gilmore noted that she had pain on range of motion in her cervical and lumbar spine and on sitting, standing, and weight bearing. Additionally, he noted that her depression was increasing.

22. During the April 17, 2017 visit, Dr. Gilmore noted that a prescribed lumbar epidural injection by Dr. Zolper at Northeast Pain Management offered some relief of radicular pain but no improvement in functional status. He stated that prior attempts to reduce oxycodone were not medically appropriate due to poor pain control and "*declining functional status.*" She was continued on up to 150 mg of oxycodone daily. At her May 17, 2017 office visit, Dr. Gilmore noted that Ms. Strout had an ongoing struggle with neck and back pain and that she had been to Dr. Zolper's office three times for two caudal injections and medial branch blocks bilaterally with only 5-7 days of temporary relief. Her functional status remained extremely limited. In his examination, he noted pain on range of motion of neck and especially in the low back.

23. Dr. Gilmore noted continued poor control of her neck and back osteoarthritic pain along with her ongoing depression. On June 16, 2017, it was noted again that the injections at Dr. Zolper's were temporarily helpful but that she returned to her prior pain status. She had a sacral-iliac nerve injection on May 30 with temporary success at pain relief. She had daytime fatigue, "somnolence." The dose of 90 mg of Cymbalta daily was not controlling her depression/pain, and duloxetine, 60 mg was added to her long prescription list. Meloxicam, a medication for arthritic pain and swelling, was also added to her prescriptions along with continued prescription of oxycodone, 150 mg daily.

24. Ms. Strout's visits with Northeast Pain Mgt. from April 11, 2017 through Juny 7, 2017 were also sent to Lincoln on appeal. Northeast Pain used detailed measurement tools to measure her pain. They use the "VAS," visual analogue scale, to measure the

patient's pain perception.  Her scale on April 11, 2017 was 8/10.  Her lumbar exam both on flexion and extension caused severe pain and severe restriction. Northeast Pain noted "lumbosacral radiculitis, "cervical radiculitis," and degenerative disc disease with arthritis of the whole spine.

25.  On April 11, 2017, a caudal epidural steroid injection was administered. A gradual exercise program was recommended for Ms. Strout. Her relief benefit was 2-4 weeks.  On May 1, 2017, she returned with low back and bilateral radicular pain into her feet that severely impacted her function and mobility.  She received a repeat caudal epidural steroid injection.  After a week she received benefit from the injection for one week before feeling gradual return of pain.  She was given bilateral L3-5 medial branch blocks.  The benefit was less than 24 hours.

26. On May 30, 2017, Ms. Strout returned to Northeast Pain with pitting edema in her thighs and swelling in her right leg.  On exam she had positive pain responses to tests such as Faber and Gaenslend.  She was treated with bilateral SI joint injections under fluoroscopic guidance.  On June 19, 2017, she returned for a scheduled appointment at Northeast Pain.  She reported about 75% improvement but temporary relief from prior injections before a gradual return of her pain and poor function.  A repeat SI injection on the left side was done.

27.  On July 7, 2017, with little improvement, Ms. Strout reported to Northeast Pain's Dr. Zolper that her pain had returned in her lower back, hip, and left buttock.  She was given another caudal steroid injection.

28.    Defendant Lincoln issued another benefit denial dated May 23, 2017 on the policy's "Own Occupation" definition of the Claimant's LTD claim.

## STATEMENT OF CLAIMS

29.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 28 above as if fully set forth herein.

30.    As of 2015, the Plaintiff's employer, Mount Desert Island Hospital, had incorporated into its employee benefit package a long-term disability benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1)(A). The Plan was insured by Lincoln, a for-profit insurer, which upon information and belief pays long-term disability benefits from its own reserve funds.

31.    The Plan promised benefits if the Plaintiff met the definition of " total disability" or "totally disabled" under the Plan. The Plan states that the definition of those phrases is: "(1) during the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation; (2) After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

32. Under Lincoln's plan, Plaintiff was entitled to receive from Lincoln 60% of her basic monthly earnings, up to $5,000 per month, at the onset of date of her disability, beginning after the elimination period of 90 days for a maximum benefit period to age 65.

33. The Plaintiff's medical evidence regarding the extent of her disability and her functional limitations compel a finding that she has been continuously and totally disabled in accordance with the definition of "disability" under the Plan since January 30, 2015 and that she continues to be totally disabled from her own occupation and throughout the appeals period and to the present and continuing.

34. Plaintiff requested review of her denial of benefits with two appeals in accordance with the Plan's appeal procedures. Lincoln denied her appeals in multiple letters, the most recent being May 23, 2017. According to Lincoln, the Plaintiff has exhausted all internal appeals.

35. The Defendant's denial was erroneous as will be demonstrated by a *de novo* review by the Court.

36. In the alternative, Defendant's denial of the Plaintiff's long-term disability benefits was unreasonable and not based on substantial evidence in the administrative record.

37. Lincoln did not afford plan beneficiary Plaintiff a full and fair review with a meaningful dialogue during the administrative appeals process. Lincoln refused to accept further evidence on the Plaintiff's medical status after its review.

38. Lincoln did not adhere to the policy language regarding administration of disability benefits and did not follow its claims practices and guidelines.

39. The Plaintiff is entitled to reinstatement of long-term disability benefits from June 7, 2016 forward, reimbursement for benefits due and not paid, interest, costs and attorney fees pursuant to 29 U.S.C. § 1132(a)(1) & (g)(1). The Plaintiff is also entitled to penalties pursuant to 29 U.S.C. § 1132(c) for failure to comply with Plaintiff's request for materials.

WHEREFORE, Plaintiff Helen Strout requests judgment against the plan and its underwriting insurer Defendant Lincoln for damages in an amount determined to be due, plus equitable relief in the form of this Court's order reinstating the Plaintiff's entitlement to disability benefits, interest, costs, attorney fees, and such further relief as the Court deems just and proper.

DATED: February 16, 2018

                                      Respectfully submitted,

                                      /s/ Katherine M. Gatti
                                      Katherine M. Gatti, Esq.

        /s/ Charles W. March
        Charles W. March, Esq.
        Attorneys for Plaintiff Helen Strout
        Injured Workers' Legal Center
        P.O. Box 419
        Topsham, Maine 04086
        (207) 874-4771